JURY TRIAL DEMANDED

IN THE UNITED STATES DISTRICT COURT<br>FOR THE SOUTHERN DISTRICT OF MISSISSIPPI<br>NORTHERN DIVISION

DR. TAREK EL-BAWAB.                                    PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:15cv733-DPJ-FKB

JACKSON STATE UNIVERSITY                                    DEFENDANT

FIRST AMENDED COMPLAINT

THIS IS AN ACTION under Title VII of the Civil Rights Act of 1964 (as amended) for national origin discrimination and retaliation in employment.

JURISDICTION

1.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 2201, along with 42 U.S.C. §2000e-16(a).  42 U.S.C. §2000e-16(a) provides generally that all personnel actions affecting employees of the State of Mississippi and Jackson State University shall be free from discrimination based upon national origin and/or retaliation.

VENUE

2.

Venue is proper in this District and Division.

PARTIES

3.

Plaintiff Dr. Tarek El-Bawab is an adult resident citizen of the Southern District of Mississippi, Northern Division.

-1-

**4.**

The Defendant Jackson State University is a body politic and corporate created by Mississippi Code Annotated § 37-125-1 *et seq.*, empowered, *inter alia*, to adopt by-laws, rules and regulations for the governing of its members, official agents, and employees, such as the Plaintiff, to contract and be contracted with, and to receive any legal method of transfer or conveyance. Defendant Jackson State University is a "University" of the "State" of Mississippi, pursuant to § 11-46-1(j) and is a "political subdivision" thereof, pursuant to § 11-46-1(i) of the Mississippi Code Annotated (Supp. 2000). Jackson State University may be served with process of this Court by serving its Chief Executive Officer, its President and Executive Head, Carolyn W. Meyers, at 1400 John R. Lynch Street, Jackson, Hinds County, Mississippi 39217. and by serving the Attorney General of the State of Mississippi, pursuant to Rule 4 (d) (5) of the Mississippi Rules of Civil Procedure. Jackson State University is an employer as defined by Title VII of the Civil Rights Act of 1964 (as amended).

## EXHAUSTION

**5.**

Plaintiff has fully exhausted all administrative remedies pursuant to Title VII of the Civil Rights Act of 1964 (as amended).

## FACTS

**6.**

On or about August 18, 2005, Dr. Tarek El-Bawab was hired as tenure-track Associate Professor in the Department of Computer [now Electrical and Computer] Engineering at Defendant Jackson State University. Dr. El-Bawab is an Egyptian with a light skin complexion.

-2-

Dr. Mahmoud Manzoul at all times material was the chair of Jackson State's Department of Computer [now Electrical and Computer] Engineering.  Dr. Manzoul is from Sudan and his skin complexion is dark.  Also, in 2005 Drs. Kamal Ali, who is from Sudan and whose skin complexion is dark, and Shahrouz Aliabadi, who is from Iran and light complected, were hired as tenured Professors, and Mr. Gordon Skelton, a white American, was hired as tenure-track Associate Professor in the same Department.  The electrical and computer engineering qualifications of all three were, and still are, much less than the corresponding qualifications of the Plaintiff.

## 7.

As an incentive for the Plaintiff's agreeing to become employed by Defendant Jackson State University, Plaintiff was promised by Dr. Robert Whalin, a white American, and Dr. Mahmoud Manzoul, that he would be able to apply for tenure and become Full Professor within two (2) years after his date of hire.  Not knowing the qualifications of others hired as tenured Full Professors in the same Department, Plaintiff agreed to join Jackson State University based on this promise. However, this promise was not honored.  Furthermore, in response to Plaintiff's application for promotion and tenure filed in 2009-2010 school year, Dr. Manzoul refused to allow the application to be considered, citing a new Jackson State University policy of requiring an applicant for promotion and tenure to have been employed for five years at Jackson State University.  It turned out that this policy was only applicable to Assistant Professors, not Associate Professors like Dr. El-Bawab.

**8.**

Furthermore, it was discovered later that, contrary to the purported five-year policy Dr. Manzoul quoted to Plaintiff, Dr. Manzoul did not dismiss the 2008-2009 and 2009-2010 promotion and tenure applications of at least one other faculty member, of different ethnicity and national origin, who had begun working at Jackson State University as Assistant, not Associate, Professor at the same time as Plaintiff Dr. El-Bawab but who was granted tenure and promoted before Plaintiff Dr. El-Bawab and within less than the five-year waiting period required of the Plaintiff. That person was allowed to apply in 2008 where he received tenure and then in 2009 where he was promoted to Associate Professor as of the fall of 2010. His 2005 hiring status was adjusted at that time by crediting him two years toward early tenure and one year toward early promotion.

**9.**

In 2010, the Plaintiff again applied for tenure and promotion. During this year, and in each and every year he applied thereafter, the Department Chair Dr. Manzoul stacked the Department's Promotion and Tenure (P&T) Committee to insure that the Plaintiff never would receive his promotion. The committee is comprised of members Dr. Manzoul knows would deny Plaintiff's application because of Plaintiff's national origin and prior protected employment activity. Also, since 2010 and until the present date, Dr. Manzoul and the committee members have been tarnishing the Plaintiff's image and reputation by writing false assertions concerning his work, competence, and personality in his promotion application files.

-4-

**10.**

In 2010, the Department's P&T Committee recommended that Plaintiff receive tenure but not promotion. The Department Chair, Dr. Manzoul, recommended that Plaintiff be denied both tenure and promotion to Full Professor. The college P&T Committee followed the Chair and recommended against both. The Dean of the College of Science, Engineering and Technology (CSET), Mark Hardy, followed the Department Committee and recommended that the Plaintiff receive tenure but not a promotion. The Provost followed the recommendation of the Department Committee and the Dean in recommending tenure but not promotion. Finally, the President of Jackson State University, Carolyn W. Meyers, who has the final say in promotion matters, granted Plaintiff tenure but not promotion. The decision to deny Dr. El-Bawab promotion was not in compliance with University policy which dictates that if an applicant is granted tenure, he must receive promotion.

**11.**

In response to being denied promotion, Plaintiff filed a complaint first with Jackson State University and then with the Equal Employment Opportunity Commission alleging that he had been denied his promotion because of his national origin, white Egyptian. After exhausting with the Equal Employment Opportunity Commission, Plaintiff filed an action, *Dr. Tarek El-Bawab vs. Jackson State University*, No. 3:11cv553-DPJ-FKB, in the United States District Court for the Southern District of Mississippi, Northern Division, concerning the decision to deny Plaintiff's 2010-2011 application for promotion. Said action was compromised and settled in January 2014.

**12.**

After the settlement, Plaintiff Dr. Tarek El-Bawab has been subjected to an increasingly hostile work environment and elevated harassment, discrimination, and retaliation by Defendant Jackson State University and its employees.

**13.**

Jackson State University's policies require that an applicant satisfy a number of requirements to be granted promotion from Associate to Full Professor.  These requirements include, *inter alia*, that the candidate have a terminal (Doctorate) degree in the discipline; that he or she has worked a minimum of eight creditable (and continuous) years as a tenure-track/tenured Assistant and Associate Professor; and that he or she satisfy certain research and scholarly requirements, authoring eight peer-reviewed scholarly journal papers and obtaining two grants. These policies include, but are not limited to, the CSET supplemental criteria  which have changed more than once and are applied capriciously.

**14.**

Promotion and tenure criteria are governed by the faculty handbook, which contains policies mandated by the Board of Institutions for Higher Learning and Supplemental Criteria of the College of Science, Engineering and Technology (CSET).

**15.**

Plaintiff and Dr. Abdelnasser Eldek, the only other Egyptian, also with a light skinned complexion, are the only two professors in the Department of Electrical and Computer Engineering, which is part of CSET, who met all criteria for promotion to Full Professor.  They also are the only two who had their applications for promotion to Full Professor denied.  Dr.

-6-

Eldek was also denied a promotion because he filed two grievances in 2013 concerning adverse differential treatment.

**16.**

Because Dr. Eldek has not followed through with his complaint and did not take it to the EEOC, and because Jackson State University wanted to pretend that it did not discriminate against Egyptians at the time the Plaintiff's previous case was preparing for trial, Dr. Eldek was approved for promotion later. Plaintiff has had all applications for promotion denied and remains an Associate Professor.

**17.**

After he was hired, the Plaintiff was denied all opportunities to perform research in his area of expertise, which is telecommunication engineering. For two years after Plaintiff filed his first civil action, Dr. Manzoul withdrew Plaintiff from any involvement in the Department's graduate program. Dr. Manzoul went so far as to cancel a required graduate course taught only by the Plaintiff (CPE 541) throughout these two years. This course was resumed briefly after the settlement. Then, immediately after Plaintiff filed his second Complaint, Dr. Manzoul withdrew the same course again to limit the Plaintiff's involvement in the graduate program and with graduate students.

**18.**

By comparison, other Electrical and Computer Engineering (ECE) faculty who do not have Electrical and Computer Engineering qualifications are made graduate faculty (against policy), teach graduate courses, have graduate students, and assume leadership positions in the graduate program.

**19.**

In 2010-2011, the Plaintiff had applied for promotion and tenure at the same time as a person of different national origin, a white American. In 2010-2011, that person was granted promotion although he did not meet the requirements. The comparative applicant was not eligible to be on the Electrical and/or Computer Engineering Faculty because he held no degrees in engineering. His undergraduate education is in Political Science and he holds a peculiar Ph.D. in Computer Science from a university in South Africa which he never visited. This person did not satisfy the publications requirements for promotion and has never been a primary author of a paper in any recognized engineering journal. This applicant also obtained no grants on his own. He was assigned the responsibility of spending earmarked money Jackson State University received, where he declared himself a primary investigator (PI) and used the privilege of the position to put his name on other grants. Although he had millions of dollars at his disposal to do scholarly engineering research, he produced none. Due to his lack of proper education pertinent to electrical and computer engineering faculty, this person is not qualified to teach undergraduate or graduate courses in this field. Although he should not be graduate faculty per Jackson State University policy itself, he was granted the status of graduate Faculty, teaches graduate courses, and serves as graduate student advisor and as PhD Program Administrator.

**20.**

Additionally, in 2005 a man, who is the same ethnicity as Manzoul was hired as Full Professor in the Department of Computer [now Electrical and Computer] Engineering when he was obviously not qualified for said position. His Bachelor and Ph.D. degrees are both in Physics and are not related to Electrical and/or Computer Engineering. He has an undesignated

Master of Science degree in Engineering. At the time of his hiring, he had no publications and no grants to be Full Professor in electrical and computer engineering. He never had been a tenure-track or tenured Engineering Professor, in any university in the United States or otherwise, before he joined Jackson State University. He had been a tenure-track/tenured Professor of Engineering Technology (not engineering, which is a different discipline) at the University of Southern Mississippi. Due to his lack of proper education pertinent to electrical and computer engineering faculty, he is not qualified to be Full Professor in this field. Without a Ph.D. in electrical or computer engineering, he should not be on the graduate faculty in this field, according to Jackson State University policy. Nevertheless, he was granted the status of a graduate faculty, teaches graduate courses, and serves as graduate student advisor in this field.

## 21.

Another person of different ethnicity and national origin also was hired by Jackson State University in 2005. He has no Electrical and/or Computer Engineering degrees. All of his degrees are in Aerospace Engineering, again, a different field. He was hired as a Tenured Full Professor after only seven years of tenure-track/tenured service at Clark Atlanta University. This hiring is contrary to policy which requires that any Faculty serve as Assistant and Associate Professor (tenured/tenure-track) for at least eight years before applying for Full Professorship. This person, therefore, received Jackson State University's Full Professorship at least two years earlier than allowed by policy. Clark Atlanta University has never had a single accredited engineering program from the Accreditation Board for Engineering and Technology, Inc. (ABET), or otherwise. Due to his lack of proper education pertinent to electrical and computer engineering faculty, this person is not qualified to be Full Professor in this field. Although he is

not qualified to be on the graduate faculty in electrical and computer engineering, according to

Jackson State University policy, he is on the graduate faculty, teaches graduate courses, and

serves as graduate student advisor in the field of electrical and computer engineering.

### 22.

Dr. Mahmoud Manzoul, the Department Chair himself, started his career as Assistant

Professor in January 1985 at Southern Illinois University, Carbondale.  By the time he left this

school, after nearly 17 years, he was still an Associate Professor.  He was hired by Jackson State

University in July 2001, also as Associate Professor.  Then, he was promoted to Full Professor in

July 2003 even though he had not published any journal paper and had not obtained any grant as

a Jackson State University Associate Professor.  There are other department chairs within

Jackson State University and CSET who are not Full Professors.  Promotion to Full Professor is

academic in nature not required for the administrative position of a department chair.

### 23.

The Plaintiff applied again for promotion in 2011-2012, after obtaining an additional

grant.  Yet, his application was wrongly denied again.  The grant(s) Jackson State University had

counted for him earlier were discounted.

### 24.

Meanwhile, during 2011-2012, Jackson State University adjusted, again, the 2005 hiring

status of the person described in Paragraph 8, above, and granted him a second premature

promotion, this time to Full Professor.  He became Full Professor as of the fall of 2012.  This

person was hired as junior Assistant Professor in August 18, 2005, at the same time as Plaintiff's,

Dr. El-Bawab's, hiring as Associate Professor.  To date, this person has not fulfilled the Jackson

State University publications requirements for full professorship which are applied on and fulfilled by Dr. El-Bawab.  He had no prior years of academic tenure-track or industrial service before joining Jackson State University.  Yet, he petitioned to add two years of prior experience and was granted three years in total over the course of the two adjustments he received.  He bypassed Plaintiff Dr. El-Bawab, who had more than 20 years of experience before joining Jackson State University and has been held at the Associate Professor level for 11 years to the present date.

### 25.

Upon hiring, and for school years 2009-2010, 2010-2011, 2011-2012, 2014-2015, and 2015-2016 when he applied for promotion, Plaintiff met and exceeded all criteria for promotion to Full Professor.  He possesses the education.  He has electrical/computer engineering degrees at all levels, having received his Ph.D. in Electrical Engineering from Colorado State University. He had produced and continues to produce in excess of two grants while employed at Jackson State University and in excess of eight journal publications.  The Plaintiff has so far seventy (70) publications in highly regarded electrical, computer, telecommunication engineering journals and conferences.  He is the only faculty member in his Department who is qualified to teach electrical, computer, and telecommunication engineering courses.  Also, Plaintiff Dr. El-Bawab had approximately 20 years of creditable industrial experience at the time of his hiring.

### 26.

As it stands now, the Plaintiff's salary is the lowest among electrical and computer engineering faculty, and is much lower than the salary of others who do not possess any qualifications in the Department's disciplines.

**27.**

One of the main reasons Plaintiff Dr. El-Bawab joined Jackson State University was the university's claim that it has a Telecommunication Engineering program, one of only a few which exist in the United States. However, upon joining, the Plaintiff, who had more than 20 years of experience in this field and has attained globally recognized stature in it, discovered major shortcomings in this program and its curricula. He proposed several corrections and made several recommendations to fix the program, but they were all dismissed by Dr. Manzoul, not because of inaccuracies in Plaintiff's suggestions but because of Manzoul's hostility towards Plaintiff and his national origin. As a result, the program failed and was shut down as announced in 2013-2014.

**28.**

Upon rejection of his proposals to fix the Jackson State University Telecommunication Engineering program by the Defendant, the Plaintiff launched a Nationwide professional movement (2008-2014) which led the Accreditation Board for Engineering and Technology, Inc. (ABET), to introduce specialized Telecommunication Engineering provisions in its accreditation criteria on November 1, 2014. As a result of this work, the Institute of Electrical and Electronic Engineering's, Inc., Communications Society (IEEE ComSoc) awarded the Plaintiff its first ever education award on December 7, 2015, "for outstanding contributions to the definition, and to the accreditation criteria, of modern communication/telecommunication engineering education; and for making changes to our education system that benefit our community, society, and the profession." The United States based IEEE is the world's largest and most recognized technical and professional society in Electrical, Computer & Telecommunication Engineering.

-12-

**29.**

During its accreditation visit to the Electrical Engineering program of Jackson State University in October 2015, ABET, the accreditation board,  identified numerous deficiencies, weaknesses, and concerns about the program.  Among these issues, ABET identified faculty members who had been fabricating the claimed weaknesses in the Plaintiff's promotion file, themselves, as a weakness in Jackson State University's accreditation file.  Based on these findings and as described hereinabove, the Department's P&T Committee has not at any time been qualified to evaluate the Plaintiff's P&T file.

**30.**

After the settlement of the 2011 promotion case in 2014, the Plaintiff submitted  to President Meyers a full account of the status of other ECE Full Professors (January 26-27, 2014). The President acknowledged receiving all this information on January 31, 2014.  The Plaintiff subsequently submitted a petition to Dr. Meyers on March 10, 2014, asking her to fully adjust his status, requesting that he be promoted retroactively to Full Professor beginning with the school year 2005-2006 and be paid back  pay accordingly.  He was advised to apply through the normal application process, which cycle was for the 2014-2015 school year.

**31.**

During the 2014-2015 school year, Plaintiff again applied for promotion to Full Professor.

**32.**

During the 2014-2015 promotion and tenure process, the Plaintiff again put before President Meyers all the facts about other faculty in his Department who lack qualifications for full professorship and continue to wrongly judge his application for the same.  On February 23, 2015 he submitted approximately 500 pages of documents proving all these matters, to which the President responded after 11 minutes stating that this information is "academic matter between Dr. El-Bawab and his colleagues in the department," and referred to these colleagues as the "guardians of excellence" in the Department's discipline.

**33.**

During the 2014-2015 promotion process, Dr. Mahmoud Manzoul, as Chair of the Department of Electrical and Computer Engineering again stacked the Department's Promotion and Tenure Committee to insure that the Plaintiff never would receive his promotion.   Manzoul appointed Shahrouz Aliabadi (chair), Kamal Ali (who had moved to and now chairs the engineering technology Department), Gordon Skelton, Khalid Abed, and Robert Whalin, all of whom have had and continue to play an inherent part in the Plaintiff's EEOC complaints because of their differential, lenient treatment by Jackson State University.  In an act of national origin discrimination and retaliation, the Committee recommended that Plaintiff's application for promotion be denied, even though no member of this Committee personally met the Jackson State University requirements for being Full Professors in this Department.  Furthermore, the committee claimed that the Plaintiff does not meet ambiguous departmental requirements which have never been applied to anybody, including these Committee members themselves.

**34.**

Dr. Mahmoud Manzoul, Chair, also being unqualified to be a Full Professor, recommended that Plaintiff's application for promotion be denied. The College (CSET) P&T Committee, members of which are not informed about subject matters, and not properly composed, recommended denial. The Dean of the College of Science, Engineering and Technology, Richard Alo, recommended denial. Provost James Renick recommended denial, and Carolyn W. Meyers, President of Jackson State University, denied Plaintiff's application for promotion.

**35.**

Correspondingly, Plaintiff's request for adjustment of status to retroactively make him a Full Professor with tenure effective 2005 also was denied in the same identical sequence by the same committees and agents of Jackson State University.

**36.**

Throughout the 2014-2015 promotion and tenure process, the dates specified by policy for notifying the Plaintiff of recommendations for promotion were not followed by the CSET Committee, by the CSET Dean, by the Jackson State University Provost, and by the Jackson State University President. Neither the college Committee Chair nor the Dean informed the Plaintiff of their recommendations and, accordingly, denied Plaintiff his right to complain and/or withdraw his application, as allowed by policy.

**37.**

Jackson State University procedure also required that Plaintiff receive the Provost's letter by March 15 to allow a timely appeal of any proposed denial. The President's final written

decision was due by April 15. Plaintiff received the President's denial letter before the Provost's letter. He received both letters in May 2015, after the end of the school year and end of faculty contracts. The sequence and timing of receiving the letters prevented Plaintiff from filing a timely internal appeal.

<strong>38.</strong>

Also contrary to policy, the Provost's letter did not specify the reason(s) Plaintiff was denied promotion. Both the Provost's and the President's letters referred Plaintiff to the Department Chair, Dr. Mahmoud Manzoul, and the CSET Dean, Dr. Richard Alo, to receive reason(s) why he was denied promotion. In response to Plaintiff's repeated requests, Dr. Manzoul, Department Chair, stated that Plaintiff had not met the grants requirement and that the Department Committee (the composition of which he controlled) had voted to deny the promotion. The Dean adopted the Chair's reasoning. However, in its Response to Plaintiff's EEOC complaint, Jackson State University stated that the Plaintiff was denied promotion because of not meeting the Jackson State University requirements of "Research, Scholarly and Creative Activities," and added that the Plaintiff "did not meet the requirements in the areas of Collegiality" and "Teaching and Advising Excellence," which are all new false assertions.

<strong>39.</strong>

Correspondingly, Plaintiff's request for adjustment of status retroactively making him Full Professor with tenure effective fall 2015 was also denied by Jackson State University. Furthermore, the University has severely impacted the Plaintiff's ability to seek other (better) jobs outside of Jackson State University.

-16-

**40.**

As a result of his complaints and for at least three (3) years, Plaintiff has not been engaged in or informed of his annual performance evaluations, in violation of Defendant's own procedures.

**41.**

Since Plaintiff's filing of his second EEOC Complaint and this case, the Defendant Jackson State University further escalated its hostility, harassment, discrimination, and retaliation toward the Plaintiff.  Defendant's actions against Plaintiff included excessive teaching assignments, efforts to fail his federal grant, creating obstacles to prohibit his research, denying him the release time he needs to do the work of these grants (despite Jackson State University's earlier commitment to give this release), having other faculty fabricate stories to tarnish Plaintiff's reputation, and filing a false Jackson State University police report against him.  The Department Chair has become aggressive, attempting intimidation of Plaintiff in meetings, including slamming his hand on the conference room table when Dr. El-Bawab speaks.

**42.**

Furthermore, after submission of another application for promotion in 2015-2016 (fifth time), and contrary to all policies and processes, to date the Plaintiff has not been informed about the outcome of any evaluation stage.  Although the final decision by the President was due on April 15, 2016, no decision has yet been received by the Plaintiff.

**43.**

As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff

has suffered loss of pay, loss of fringe benefits, loss of retirement savings, loss of promotion, loss

of reputation, aggravation, and severe mental anguish and emotional distress.

## DISCRIMINATION

**44.**

Plaintiff is (1) a member of a protected class, (2) Plaintiff is qualified for his position, (3)

Plaintiff has suffered an adverse employment action, and (4) favorable treatment was given to

persons outside the protected class and others similarly situated were treated more favorably.

The discrimination has been meted out against Plaintiff Dr. Tarek El-Bawab because of his

national origin, white Egyptian.

## HOSTILE WORK ENVIRONMENT

**45.**

The Plaintiff (1) belongs to a protected class, (2) Plaintiff has been subjected to

unwelcome, abusive, and discriminatory conduct by the Defendant, (3) the harassment was based

upon national origin, white Egyptian, and (4) the harassment affected a term, condition, or

privilege of employment.  Under a totality of the circumstances, the Plaintiff can show that he

has been subjected to harassment and that the harassment had been continuous and is ongoing.

## RETALIATION

**46.**

The Plaintiff (1) has engaged in activity protected under Title VII of the Civil Rights Act

of 1964 (as amended), (2) an adverse employment action occurred when Plaintiff did not receive

his promotion and his adjustment of status, and (3) a causal link exists between Plaintiff Dr. Tarek El-Bawab's protected activity and the adverse action or actions.

## IRREPARABLE HARM

### 47.

Plaintiff faces irreparable harm for which there is no adequate or speedy remedy of law.

### 48.

Plaintiff is entitled to an injunction adjusting his status by directing Defendant Jackson State University to promote him to Full Professor retroactively for the school year 2005-2006 until the present date, and to pay Plaintiff Dr. Tarek El-Bawab the back pay and fringe benefits owed him, said back pay being the difference between what he was paid and what he would have been paid as Full Professor beginning with the school year 2005-2006 until the present. This Court also should order a prospective injunction enjoining Defendant Jackson State University to maintain the Plaintiff as a Full Professor of the Department of Electrical and Computer Engineering and of the College of Science, Engineering and Technology.

### 49.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the following relief assessed and awarded:

1.    An injunction promoting Plaintiff to Full Professor effective the 2005-2006 school year with full back pay including all fringe benefits.

2.    A judgment of and from the Defendant in an amount set by the jury for full back pay, including all fringe benefits, salary increases, awards and bonuses and income lost for Plaintiff's having been passed over for promotions, not afforded to the Plaintiff because of

discrimination based upon his national origin, white Egyptian, a hostile work environment, and retaliation for asserting his Equal Employment Opportunity rights.

3.  An injunction promoting the Plaintiff to positions and commensurate pay he would have held and received if he had not been subjected to discrimination and retaliation, as well as correction of his annual performance evaluations.

4.  Damages in an amount set by the jury for mental anguish, loss of reputation, and emotional distress proximately caused by the retaliation, national origin discrimination, and hostile working environment Plaintiff has suffered.

5.  The cost of this cause including a reasonable attorney's fees.

6.  General relief.

Respectfully submitted, this the 27th day of May, 2016.


/s/ Dennis L. Horn
Dennis L. Horn, Attorney for Plaintiff,
Dr. Tarek El-Bawab


Dennis L. Horn (MSB #2645)
HORN & PAYNE, PLLC
P. O. Box 2754
Madison, MS 39130-2754
Telephone:  (601) 853-6090
Facsimile:  (601) 853-2878
hornpayne@gmail.com

## CERTIFICATE OF SERVICE

I, Dennis L. Horn, certify that I have this date served the Clerk of this Court using the ECF system, a true and correct copy of the above and foregoing *First Amended Complaint* which sent notification of such filing to the following:

> Hon. Latona C. Merritt
> Hon. Gregory Todd Butler
> 4270 I-55 North
> Jackson, MS 39211-6391
> merrittl@phelps.com
> butlert@phelps.com

This the 27th day of May, 2016.

/s/ Dennis L. Horn _____
Dennis L. Horn