UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DR. TAREK EL-BAWAB                                                    PLAINTIFF

V.                                               CIVIL ACTION NO. 3:15-CV-733-DPJ-FKB

JACKSON STATE UNIVERSITY                                              DEFENDANT
                          consolidated with

DR. TAREK EL-BAWAB                                                    PLAINTIFF

V.                                               CIVIL ACTION NO. 3:16-CV-845-DPJ-FKB

CAROLYN W. MEYERS, individually
and in her official capacity,
RICHARD A. ALO, individually and
in his official capacity, AND
MAHMOUD A. MANZOUL, individually
and in his official capacity                                          DEFENDANTS

ORDER

Defendants Jackson State University ("JSU"), Carolyn Meyers, Richard Alo, and

Mahmoud Manzoul seek summary judgment in these consolidated employment cases.  Based on

the following analysis, Defendants' Motion for Summary Judgment [95] is granted as to the

§ 1983 First Amendment retaliation claim, any Title VII claim against individual defendants, and

any color-based Title VII claim.  The motion is otherwise denied.  Plaintiff's Motion to

Supplement [112] is granted; Defendants' Motion to Strike [113] is denied.

I.      Background

        Plaintiff Tarek El-Bawab—an Egyptian with a white complexion—brings three claims

under Title VII of the Civil Rights Act of 1964:  (1) a failure-to-promote claim based on two

unsuccessful applications for promotion to full professor in 2014 and 2015; (2) a retaliation

claim based on his prior complaints of discrimination; and (3) a hostile-work-environment claim.

El-Bawab also pursues a claim under 42 U.S.C. § 1983, asserting that all Defendants retaliated against him for exercising his First Amendment right to free speech when he criticized his co-workers' qualifications to serve as full professors. These consolidated cases are not his first against JSU.

JSU hired El-Bawab in August 2005 as an associate professor in the Department of Electrical and Computer Engineering ("DECE"). In fall 2010, El-Bawab applied for promotion to full professor, but the application failed, so he sued JSU under Title VII. *See El-Bawab v. Jackson State University*, No. 3:11-CV-553-DPJ-FKB ("*El-Bawab I*"). That action was settled and dismissed on January 21, 2014.

A few days later, on January 27, 2014, El-Bawab sent three emails to Defendant Meyers, then JSU's President, regarding the alleged deficient qualifications of three faculty members in DECE: Kamal Ali, Gordon Skelton, and Khalid Abed. *See* Ali Email [102-9] at 86; Skelton Email [102-12] at 1; Abed Email [102-9] at 1. In conjunction with those communications, El-Bawab sent Meyers voluminous employment records regarding these other professors in an effort to show that they were unqualified and, in some cases, had committed unethical acts. He also complained to Meyers that Defendant Mahmoud Manzoul gave preferential treatment to the other professors while unfairly rejecting El-Bawab's superior qualifications. El-Bawab then aired these same beliefs during a review conducted by the Accreditation Board for Engineering and Technology, Inc. ("ABET").

Roughly following these events, El-Bawab twice re-applied for promotion to full professor. In both instances, the process included several layers of review starting with a Promotion and Tenure Committee made up of DECE faculty and ending with a final decision from President Meyers. According to Meyers, "the most important [committee] is the

departmental [committee]. These are the experts in that discipline." Meyers Dep. [102-8] at 6. JSU denied both applications citing insufficient grant procurement and other issues.

El-Bawab says these decisions resulted from discriminatory animus and retaliation for both his prior Title VII complaints and his protected speech criticizing his co-workers. More specifically, he believes his department head, Defendant Manzoul, sabotaged his applications in 2014 and 2015 by packing the committees with professors El-Bawab had personally attacked. In 2014, the committee included: Ali, Skelton, Abed, Dr. Shahrouz Aliabadi, and Dr. Robert Whalin. El-Bawab attacked the first three in his emails to President Meyers, and he attacked Dr. Whalin in *El-Bawab I*. Ali Email [102-9] at 86; Skelton Email [102-12] at 1; Abed Email [102-9] at 1; *El-Bawab I*, Mem. Opp'n [70] at 14 (detailing complaints concerning Whalin). And just in case anyone forgot, El-Bawab supplemented his 2014 application on February 23, 2015, to include his emails to Dr. Meyers and add additional concerns against the only committee member he had not previously assailed, Dr. Aliabadi. Appendum to 2014 Application [102-5] at 21–24. The committee voted to reject the 2014 application for promotion to full professor, and Meyers ultimately concurred.

Manzoul likewise filled the 2015 committee with professors El-Bawab had attacked. Indeed the only member of the 2015 committee El-Bawab had not accused of being unqualified for his job was Dr. Abdelnasser Eldek. Dr. Eldek dissented from the committee's recommendation against promotion to full professor, believing that El-Bawab met JSU's requirements. *See* Eldek Dep. [102-3] at 62. Again, several layers of review followed, and Meyers ultimately reached the same conclusion as Manzoul's committee.

Sprinkled throughout this timeline are other confrontations between El-Bawab, Manzoul, and others. El-Bawab believes these encounters were also based on discrimination and retaliation.

After filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation and national-origin discrimination as to the 2014 application, El-Bawab sued JSU under Title VII on October 9, 2015, in Civil Action No. 3:15-CV-733. On October 27, 2016, El-Bawab again sued JSU in Civil Action No. 3:16-CV-845 after a second EEOC charge asserting retaliation and national-origin discrimination related to his failed 2015 promotion application. That suit also raised Title VII claims, but it added claims under 42 U.S.C. § 1983 and claims against Defendants Meyers, Alo, and Manzoul. The Court consolidated the cases on November 30, 2016, and after the discovery period ended, Defendants jointly moved for summary judgment [95]. The Court has subject-matter and personal jurisdiction.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

Two additional notes are important in this case. First, the party responding under Rule 56(c)(1), must cite to "*particular* parts of materials in the record." Fed. R. Civ. P. 56(c)(1) (emphasis added). The Court is under no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (citation and quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials."). In the present case, El-Bawab attaches nearly 2,000 pages of documents and cites a small percentage of them in his brief. Second, the non-movant "must identify specific evidence in the record *and articulate* the manner in which that evidence supports [his] claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (emphasis added). Here, Plaintiff's response is at times a frustrating read because it intermingles the issues and often fails to directly address Defendants' legal arguments with countervailing law and specific facts. The Court has made every effort to consider the record as

a whole and match Plaintiff's points to Defendants' arguments, but there are times when the response is not sufficiently articulated.

III.     Analysis

A.     Section 1983 First Amendment Retaliation Claims

El-Bawab believes JSU refused to promote him to full professor because he criticized the credentials of other faculty members who attained that rank. According to him, his criticism was protected by the First Amendment to the United States Constitution, and therefore Defendants violated his right to free speech. Because the analysis for these § 1983 claims differs for each Defendant, the Court will separately consider the claims.

1.     Claims against JSU and Individuals in Their Official Capacities

The threshold question is whether the Eleventh Amendment bars El-Bawab's claims against JSU and its employees sued in their official capacities. "The Eleventh Amendment grants a state immunity from suit in federal court by . . . its own citizens." *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002). Immunity also extends to state agencies that are considered "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Finally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id.* at 71. Such a suit is also barred by the Eleventh Amendment. *Id.*

El-Bawab never directly concedes this point, but he offers no cogent reason why the Court should not follow those cases granting Eleventh Amendment immunity to JSU and its officers sued in their official capacities. *See, e.g.*, *Bridges v. Brown*, No. 3:16-CV-760-TSL-RHW, 2017 WL 579548, at *1 (S.D. Miss. Feb. 10, 2017) (holding that JSU's Eleventh Amendment argument is "clearly meritorious"); *Ward v. Jackson State Univ.*, No. 3:11-CV-188-

TSL-MTP, 2013 WL 75077, at *2 (S.D. Miss. Jan. 4, 2013); *Meredith v. Jackson State Univ.*, No. 3:09-CV-303-DPJ-FKB, 2010 WL 606402, at *2 (S.D. Miss. Feb. 17, 2010) (granting immunity and noting that "[i]n both published and unpublished decisions, this Court has consistently found JSU to be an arm of the state").

El-Bawab does, however, make passing reference to *Ex parte Young* when addressing the official-capacity claims. 209 U.S. 123, 155–56 (1908). In *Ex parte Young*, the Court "created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities." *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 320 (5th Cir. 2008) (citing *Ex parte Young*, 209 U.S. 123). This exception would not save El-Bawab's claims for monetary damages, which are hereby dismissed as to JSU and the official-capacity defendants. But it could conceivably allow him to proceed on his claim for prospective injunctive relief—an immediate promotion to full professor. *Id.*

For a state officer to face liability under *Ex parte Young*, that officer must have "some connection" to the requested relief. *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). Here, Meyers is the only individual defendant who ever had authority to grant the prospective relief El-Bawab seeks, but she is no longer employed by JSU. So none of the current Defendants are proper parties under *Ex parte Young*.

Under some circumstances, the Court might invite a plaintiff to seek leave to amend and substitute parties. *See Mangaroo v. Nelson*, 864 F.2d 1202, 1204 (5th Cir. 1989) (stating in dicta that successors in office replace their predecessors in cases against them in their official capacities). But as discussed next, requesting leave to amend would be futile.

2. Individual-Capacity Claims Against Defendants Alo, Manzoul, and Meyers

As El-Bawab correctly notes, the Eleventh Amendment does not bar a claim against individuals sued in their individual capacity. *See Will*, 491 U.S. at 67–71. But these claims raise a different barrier that El-Bawab ignores—qualified immunity. *See* Defs.' Mem. [96] at 14. Qualified immunity is a shield from individual liability for "government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the Court must determine "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). And "[w]hen a defendant raises qualified immunity, the burden is on the plaintiff to 'demonstrate the inapplicability of the defense.'" *Coleman v. Marion Cty.*, No. 2:14-cv-185-DPJ-FKB, 2015 WL 5098524, at *6 (S.D. Miss. Aug. 31, 2015) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)). The Court will apply these concepts to the claims against the individual defendants.

a.    Individual-Capacity Claims Against Meyers

The parties seem to agree that President Meyers made the ultimate decision to deny

promotion and that she was not motivated by retaliatory animus.  But El-Bawab says others

retaliated against him for exercising his right to free speech and that Meyers is therefore

individually liable under a cat's paw analysis.

Generally speaking, El-Bawab has a right to make protected speech.  "The Supreme

Court has unequivocally rejected the notion that public employees forfeit their right to freedom

of speech by virtue of their public employment.  However, the Court has also recognized that the

State has an interest in regulating the speech of its employees."  *Graziosi v. City of Greenville*

*Miss.*, 775 F.3d 731, 736 (5th Cir. 2015) (citing *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568

(1968)).

> [T]o succeed in a First Amendment retaliation claim under § 1983, a public
> employee must show:  "(1) he suffered an adverse employment action; (2) he
> spoke as a citizen on a matter of public concern; (3) his interest in the speech
> outweighs the government's interest in the efficient provision of public services;
> and (4) the speech precipitated the adverse employment action."

*Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting *Nixon v. City of Hous.*, 511

F.3d 494, 497 (5th Cir. 2007)).

Here, Defendants primarily dispute the second element—whether El-Bawab spoke as a

citizen on a matter of public concern.  Most notably, they say he spoke as an employee, which is

a question of law.  *Graziosi*, 775 F.3d at 736.  For his part, El-Bawab generally acknowledges his

need to meet this element, but he focuses his attention elsewhere.  Other than offering a few legal

generalities, he never explores the citizen-speech component of the test and never ties it to the

facts as Rule 56(c) requires.  *See Duffie*, 600 F.3d at 371 (noting that non-movant "must identify

specific evidence in the record and articulate the manner in which that evidence supports [his]

claim"). Nevertheless, the Court is still required to examine the issue and determine whether Defendants are entitled to judgment in their favor. They are.

In *Garcetti v. Ceballos*, the Supreme Court held that courts must—as a threshold issue—consider whether the plaintiff employee spoke as a citizen. 547 U.S. 410, 416 (2006). It explained that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

> Yet despite its enunciation of that rule of law, the Supreme Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id.* at 424. The Court did state, however, that job descriptions are not dispositive, *id.* at 424–25, that the fact that speech concerns the subject matter of employment is not dispositive, *id.* at 421, and that whether the employee expresses himself in the office is not dispositive, *id.* at 420. Rather, "the proper inquiry is a practical one," and it focuses solely on whether the speech was performed "within the scope of the employee's professional duties." *Id.* at 424–25.

*Gibson v. Kilpatrick*, 773 F.3d 661, 667 (5th Cir. 2014) (parallel cites omitted).

The Supreme Court provided a little more context in *Lane v. Franks*, ─── U.S. ───, 134 S. Ct. 2369 (2014). There, the plaintiff was fired after testifying under subpoena before a grand jury about alleged unlawful conduct at his public workplace. *Lane*, 134 S. Ct. at 2375. The Court explained that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 2379. It was undisputed in *Lane* that the plaintiff's "ordinary job responsibilities did not include testifying in court proceedings." *Id.* 2378 n.4. The Court concluded that he spoke as a citizen.

Here, the only speech El-Bawab specifically addresses in the First Amendment section of his memorandum is the conversation he had with ABET where he complained that the full professors in his department were not qualified for their positions. *See* Pl.'s Mem. [101] at 26–28. The Court will therefore examine that speech in light of the applicable law.[1]

As noted, the ABET interview occurred at JSU, and it related to El-Bawab's work. But those facts are not dispositive of whether he spoke as a citizen. *See Gibson*, 773 F.3d at 667. The question is whether he spoke within the scope of his duties. *Id.* And on that point, El-Bawab himself testified that he met with ABET in his "capacity as a Jackson State University associated professor." El-Bawab Test. [109-5] at 3. Indeed he was "required" to do so because ABET met with every faculty member. *Id.* And this accreditation process was a routine part of academic life. *See* TRO Tr. [102-1] at 37–38 (noting that accreditation visits by ABET are initiated only by an invitation from the college seeking accreditation).

"[W]hen an employee's official duties include communicating with outside agencies . . . , it would be in dissonance with *Garcetti* to conclude that, when he does so, he enjoys First Amendment protection." *Gibson*, 773 F.3d at 670. *Gibson* is a good example. There, the Fifth

---

[1] El-Bawab is a little coy in this regard, saying that the protected activity "included" the conversation with ABET. Pl.'s Resp. [101] at 3. And in other parts of his brief, he mentions the emails he sent to Meyers complaining about his colleagues in the department. But as stated, El-Bawab has the burden under Rule 56(c) to tie specific facts to the law. *Duffie*, 600 F.3d at 371. Accordingly, the Court focuses on the only speech El-Bawab addressed for this claim—the ABET interview. Regardless, even a cursory review of the emails shows that El-Bawab's criticism of the other faculty members related to his own failed promotion. *See, e.g.*, Skelton Email [102-8] at 64 (claiming that Manzoul treated another faculty member favorably yet "[h]e trashes the totality of my work"). These internal complaints sent up the chain of command are not protected speech because El-Bawab spoke as an employee about a matter of personal concern. *See Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 341 (5th Cir. 2003) ("Speech that is primarily motivated by, or primarily addresses, the employee's own employment status rather than a matter of public concern does not give rise to a cause of action under § 1983.").

Circuit applied *Lane* and held that a police chief was "acting pursuant to his official duties" when reporting the mayor's malfeasance to outside law-enforcement agencies. *Id.* at 670–71; *see Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 390 (5th Cir. 2017) (stating that participating in an employer's investigation is "ordinarily" within scope of employee's duties), *cert. denied*, 138 S. Ct. 212 (2017). The same is true here.

Finally, El-Bawab at least suggests that he spoke as a citizen because he was reporting public corruption. That is not enough. A public employee does not speak as a citizen "whenever public corruption is involved." *Gibson*, 773 F.3d at 669. So on this record, El-Bawab has failed to show that Defendant Meyers violated his First Amendment rights, much less that her actions were objectively unreasonable in light of clearly established law. The First Amendment claim against her is dismissed.[2]

      b.     Individual-Capacity Claims Against Alo and Manzoul

Because El-Bawab has not shown that he spoke as a citizen on a matter of public concern, the claims against Defendants Alo and Manzoul must likewise fail. But these Defendants offer an alternative argument for qualified immunity that is equally persuasive: Alo and Manzoul were not final decision-makers. Defs.' Mem. [96] at 14. And as they contend, it is not clearly established that such employees can face individual liability for a First Amendment retaliation claim. *Compare Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004) (holding that "only final decision-makers may be held liable for First Amendment retaliation under

---

[2] Based on this finding, it is not necessary to evaluate other deficiencies in this claim, but they exist. For example, there is little attention to how Defendant Meyers is herself individually liable under § 1983. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) ("Supervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious or respondeat superior liability."). Moreover, the record as a whole shows that El-Bawab consistently linked his complaints about the other professors to his own grievances. *See Foley*, 355 F.3d 333, 341 (5th Cir. 2003).

§ 1983"), *with Culbertson v. Lykos*, 790 F.3d 608, 626 (5th Cir. 2015) (noting "tension" on this issue).

This issue arose more recently in *Pennypacker v. City of Pearl, Mississippi*, 689 F. App'x 332 (5th Cir. 2017). There, the district court denied summary judgment to individual defendants in a First Amendment context, but the Fifth Circuit reversed, holding that they were entitled to qualified immunity because "it is not clearly established in this circuit whether [non-final decision-makers] may be held personally liable for First Amendment retaliation under § 1983." *Id.* El-Bawab rejects that holding as a non-binding unpublished opinion, but he fails to show it was incorrect. Pl.'s Mem. [101] at 30–31.

So even assuming El-Bawab had established a constitutional violation, his First Amendment retaliation claims against Alo and Manzoul would still fail. El-Bawab has not met his burden of showing that Alo's and Manzoul's actions "were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Collier*, 569 F.3d at 217. These claims are dismissed.

B.    Title VII Threshold Issues

El-Bawab asserts retaliation and discrimination claims under Title VII. But before the Court addresses those claims, there are five issues to consider: (1) whether El-Bawab asserts Title VII claims against Meyers, Alo, and Manzoul; (2) whether he may proceed on a claim that his color motivated unlawful discrimination; (3) whether this case proceeds under the direct-evidence or circumstantial-evidence model; (4) whether El-Bawab is entitled to an adverse inference based on spoliation of evidence; and (5) whether the Court should consider El-Bawab's affidavit.

### 1.  Individual Defendants

Defendants says El-Bawab may not assert Title VII claims against the individual defendants.  Assuming El-Bawab intended such a claim—which is not apparent from the operative Complaint—then Defendants are correct.  JSU is the only proper defendant because "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003).

### 2.  Title VII Color Claim

JSU says El-Bawab failed to exhaust his administrative remedies as to the Title VII "color" claim he presses in his summary-judgment response.  Defs.' Reply [108] at 15.  El-Bawab filed two charges of discrimination with the EEOC related to his claims in this consolidated case.  *See* EEOC Charge No. 423-2015-00440 [102-24]; EEOC Charge No. 423-2017-00028 [102-25].  Neither charge checked the box for "color" when identifying the basis of the claims.

The Fifth Circuit recently reiterated the test for exhaustion in the Title VII context:

> In determining whether a plaintiff has exhausted a particular claim, we have noted that "the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).  "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* at 788–89.  To balance these considerations, "this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).  "We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

*Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017).

The Court finds *Silva v. Chertoff* instructive. 512 F. Supp. 2d 792 (W.D. Tex. 2007). There, a plaintiff filed a complaint with the EEOC alleging discrimination based on age, race, national origin, and physical disability. *Id.* at 819. When the plaintiff sued, however, he brought an additional claim that he was discriminated against because he was also "regarded as disabled." *Id.* Upon review, the court held that this "regarded as disabled" claim must be dismissed because of the plaintiff's failure to administratively exhaust. *Id.* Guiding the court was the fact that the plaintiff's

> initial and supplemental EEOC filings describe[d] only his physical disability and the agency's alleged failure to provide a reasonable accommodation for it. Silva's allegations do not present a sufficient factual predicate such that one would reasonably expect the EEOC to have investigated a "regarded as disabled claim"; nothing in Silva's filings suggests the agency misperceived the nature of his injury or its effect on his ability to engage in major life activities.

*Id.* at 819–20.

Likewise, in the instant case, the Court finds that El-Bawab failed to exhaust his color claim. El-Bawab filed two EEOC charges of discrimination and neither time checked the box for "color." He also filed two supplements to one of those charges, yet nowhere in his submissions did he "present a sufficient factual predicate such that one would reasonably expect the EEOC to have investigated a [color-discrimination claim]." *Id.* at 820. El-Bawab mentioned facts pertaining only to his national origin and did not once say that his color motivated Defendants. *See* EEOC Charge No. 423-2015-00440 [102-24]; EEOC Charge No. 423-2017-00028 [102-25] (adding a charge of a hostile work environment). Congress recognized separate claims for national origin and color under Title VII; El-Bawab exhausted the former but not the latter.[3]

---

[3] It is worth noting that El-Bawab filed two initial complaints and two amended complaints in these consolidated cases. All four pleadings expressly stated that the Title VII claims were based on national-origin discrimination and retaliation. Generally speaking, and in this specific context, "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of*

15

"The analytical framework for addressing a Title VII claim depends on whether the plaintiff has presented direct or circumstantial evidence of discrimination."  *Lazarou v. Miss. State Univ.*, 549 F. App'x 275, 278 (5th Cir. 2013).  Here, the parties dispute whether there is direct evidence of retaliation or discrimination.

Whether workplace remarks constitute "direct evidence," or only "stray remarks," is a familiar question answered by the following four factors:  whether the comments are "(1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision."  *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)), *as revised* (Feb. 3, 2015).

"In applying this test, our ultimate focus is on whether the comments prove, 'without inference or presumption, that [the protected characteristic] was *a* basis in employment decisions' in the plaintiff's workplace."  *Id.* (emphasis in original) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005)).  "Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment."  *Jackson*, 602 F.3d at 380.

Here, there are two statements El-Bawab views as direct evidence.  First, he says "Professor Manzoul was direct.  He would not say he would vote to promote Dr. El-Bawab

*Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citation omitted).  Given four submissions to the EEOC and four complaints in this Court without a Title VII color claim, it would prejudice JSU to allow El-Bawab to add that claim after the deadline to amend and the close of discovery.

'because of the emails attacking him and everybody in the Department.'" Pl.'s Resp. [101] at 19 (quoting Manzoul Dep. [102-2] at 24). Second, El-Bawab claims that Defendant Manzoul verbally attacked him in Arabic saying he was "fed up with our arrogance." *Id.* at 17.

Neither of these constitutes direct evidence. The first statement mischaracterizes the deposition testimony El-Bawab cites to support it. Manzoul never says he would not promote El-Bawab due to his emails, and instead states that while they were annoying, it was just "one component" that they could live with, and that there were other issues. *Compare* Manzoul Dep. [102-2] at 24, *with* Pl.'s Resp. [101] at 24. Regardless, the testimony does not relate to El-Bawab's national origin, nor has El-Bawab contended that the emails themselves constitute protected activity in the Title VII anti-retaliation sense. *See supra* at 11. So the statement, even if true, would not meet the first prong of the test.

The second statement also falls short. Manzoul apparently told El-Bawab during a confrontation in November 2014 that he was "fed up with our arrogance." El-Bawab Dep. [102-13] at 40; *see* Pl.'s Resp. [101] at 10. El-Bawab views this as a comment on his national origin. Pl.'s Resp. [101] at 17–18. But the statement is strikingly similar to one the Fifth Circuit rejected in *Lazarou*, 549 F. App'x at 280. There, the plaintiff was told by a decisionmaker that "maybe [he] had character issues because of his background." *Id.* The Fifth Circuit found no direct evidence of national-origin discrimination because the statement was "too ambiguous," too remote in time, and not related to the employment decision. *Id.* The same is true here. El-Bawab must therefore pursue a circumstantial-evidence case under the familiar *McDonnell Douglas* burden-shifting framework.

4.      Spoliation

Finally, El-Bawab makes the specious argument that JSU spoliated evidence by failing to produce documents in response to a request by the EEOC.  Pl.'s Mem. [101] at 34.  But as the case El-Bawab cites clearly states, sanctions for spoliation are available when a party willfully or intentionally destroys evidence "to prevent its use in litigation."  *Stewart v. Belhaven Univ.*, No. 3:16-CV-744-CWR-LRA, 2017 WL 3995989, at *1 (S.D. Miss. Sept. 8, 2017).  Even assuming JSU refused to produce documents to the EEOC, that does not mean it destroyed anything, much less that it did so with intent to deprive El-Bawab of evidence.  Vigorous discovery followed the EEOC process, and El-Bawab has not established a credible spoliation argument.

5.      El-Bawab's Affidavit

When El-Bawab filed his summary-judgment response, he listed 15 exhibits, including Exhibit "D," which he described as "Affidavit of Plaintiff, Dr. Tarek El-Bawab."  Pl.'s Resp. [102].  He then referenced the affidavit repeatedly in his supporting memorandum [101].  But El-Bawab neglected to actually docket the exhibit when he filed his voluminous record with the Court.  After JSU observed this omission in its reply, El-Bawab filed the exhibit and a Motion to Supplement [112]; JSU filed a Motion to Strike [113].

JSU says the affidavit should be stricken because:  (1) El-Bawab never requested leave from the Court to file his exhibit; (2) El-Bawab cannot show excusable neglect; (3) the affidavit is inconsistent with El-Bawab's prior sworn testimony; and (4) the affidavit contains hearsay and improper legal conclusions.  *See* Defs.' Mem. [114].

The first two arguments are not persuasive.  First, El-Bawab has filed a Motion to Supplement, so JSU's first issue is moot.  Second, as to excusable neglect, any prejudice here is minimal because the affidavit is largely redundant of other evidence and JSU clearly knew

before filing its reply that El-Bawab had neglected to attach it. This was an obvious oversight, but the record was large, and El-Bawab had to conventionally file it due to the presence of confidential information. There is no limit to the size of a record, and JSU has produced no evidence of bad faith. *See Friedman & Feiger, L.L.P. v. ULofts Lubbock, LLC*, No. 3:09-CV-1384-SAF, 2009 WL 3378401, at *1 (N.D. Tex. Oct. 19, 2009) ("Excusable neglect is intended and has proven to be quite elastic in its application. In essence it is an equitable concept that must take account of all relevant circumstances of the party's failure to act within the required time.").

JSU's remaining arguments are more compelling. As it notes, El-Bawab probably contradicted his deposition in at least one respect. In his affidavit, El-Bawab states that he "reapplied [in 2015 for full professor] adding even another federal grant from the US Department of Commerce's National Institute of Standards and Technology (NIST)." El-Bawab Aff. [110] at 14. But during his deposition, he testified that he could not remember when he added that grant. *See* El-Bawab Dep. [117-2] at 2.

To the extent the affidavit differs, the Court will rely on the deposition testimony on this point, but it will not strike the affidavit. *See Lee v. Nat'l Life Assur. Co. of Can.*, 632 F.2d 524, 529 (5th Cir. 1980) ("The rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit."). Similarly, the Court will disregard the portions of El-Bawab's affidavit that contain hearsay or improper legal conclusions and arguments. But as noted, the affidavit is largely redundant of other evidence, and it would not alter the Court's ruling on the summary-judgment motion.

Having addressed those general issues, the Court now turns to the more specific claims, starting with retaliation.

C.    Title VII Retaliation

El-Bawab says JSU retaliated against him for complaining about alleged discrimination. In a Title VII retaliation case, the plaintiff must show:  "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Zamora v. City of Hous.*, 798 F.3d 326, 331 (5th Cir. 2015).  JSU disputes the first and third elements.

JSU first observes that El-Bawab has been imprecise in identifying the alleged protected activity.  Defs.' Mem. [96] at 11; Defs.' Reply [108] at 3–4, 6–7.  El-Bawab responds that JSU "does not dispute that filing a complaint with the EEOC is protected activity under Title VII." Pl.'s Mem. [101] at 28–29.  This is his only attention to the issue in the Title VII retaliation section of his response, so the Court will focus on the EEOC charges.

"Filing a claim with the EEOC qualifies as a protected activity."  *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 755 n.5 (5th Cir. 2005).  And El-Bawab has filed lots of them.  But, as JSU notes, El-Bawab never says which charges buttress his Title VII retaliation claim in this case. Looking to the record, it does not appear that El-Bawab relies on the charges he filed before settling *El-Bawab I*, nor would he need to.  The charge he filed November 28, 2014, and the supplements he filed February 2 and 26, 2015, suffice.  *See* EEOC Charge No. 423-2015-00440 [102-24] at 8–9.  Those charges came before the disputed promotion decisions, which are the only adverse actions JSU seems to address.[4]  El-Bawab has met his burden as to the first element.

---

[4] El-Bawab could have simply pointed to *El-Bawab I*.  *See Garza v. Prestige Ford Garland Ltd. P'ship*, 275 F.3d 42 (5th Cir. 2001) (observing that filing a "lawsuit is obviously protected activity").

JSU's only other Title VII retaliation argument is that El-Bawab has not shown his protected activity was a "but for" cause of the failed promotions because he lacked the grants necessary to qualify for those promotions. *See* Defs.' Reply [108] at 23. If the only alleged adverse actions were the failed promotions, then JSU's argument would be more compelling. But that is not so. In a Title VII retaliation case, adverse actions are not limited to ultimate employment decisions. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). They instead exist when "a reasonable employee would have found the challenged action materially adverse," in other words, "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*

Here, El-Bawab lists a litany of ways he believes JSU retaliated against him. *See* Pl.'s Mem. [101] at 10, 14–17. And the list does not end with El-Bawab's brief. *See, e.g.*, Conference Travel Denial Email [102-10] at 45; 2016 NIST Proposal Obstruction Email [102-2] at 85.

At this point, JSU has not challenged these other acts under *White*. So assuming for now that they were adverse employment actions, the lack of qualification to be a full professor would not address causation as to those other acts. For example, the way the committee was filled might be an adverse action even if causation is lacking as to the committee's recommendation. Because the alleged lack of grants would not address causation as to the other adverse actions listed in El-Bawab's memorandum and the record, the motion must be denied.

Finally, as for the promotions and JSU's argument that El-Bawab was not qualified, that argument raises at least two potential questions of fact—whether his grants were properly considered and whether JSU inhibited his ability to obtain grants. If so, then the lack of grants

would not doom the retaliation-causation element. As discussed next, the Court will carry this issue to trial.

D.     Title VII Hostile-Work-Environment and Discrimination Claims

The Court has invested considerable time reviewing this record and the legal issues as they relate to the hostile-work-environment and discrimination claims. El-Bawab catalogs numerous examples of alleged harassment. Some of the more notable incidents include Defendant Manzoul's alleged efforts to pack the promotion committee, block El-Bawab's efforts to obtain grants, and block travel necessary to present his work and obtain grant funds. *See* Conference Travel Denial Email [102-10] at 45; 2016 NIST Proposal Email [102-2] at 85. There are also lesser confrontations listed throughout the record. *See, e.g.*, Pl.'s Mem. [101] at 10, 14–17. JSU no doubt has answers for these issues, but the record must be viewed in the light most favorable to El-Bawab. And in that light, there is a jury question whether the alleged harassment was sufficiently severe and pervasive to state a hostile-work-environment claim.

But the Court has struggled with whether El-Bawab has presented sufficient evidence that, as Dr. Eldek testified, El-Bawab was qualified for promotion to full professor; whether he has actually shown a valid comparator; and whether he ultimately meets his causation burden on either of these remaining Title VII claims.

As the Fifth Circuit has frequently observed, "even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'a better course would be to proceed to a full trial.'" *Kunin v. Feofanov*, 69 F.3d 59, 62 (5th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986)). And in this case, the evidence related to the Title VII retaliation claim should overlap the evidence related to these remaining claims. Accordingly, they will be carried over to trial.

IV.     Conclusion

The Court has considered all parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Defendants' Motion for Summary Judgment [95] is granted as to all First Amendment claims, any Title VII claims against individual defendants, and any color-based claims under Title VII.  The motion is otherwise denied.  Plaintiff's Motion to Supplement [112] is granted; Defendants' Motion to Strike [113] is denied.  The individual Defendants are dismissed.

**SO ORDERED AND ADJUDGED** this the 24th day of January, 2018.


s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE